# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| Erik Mickelson and Corey Statham, | Civil No. 13-CV-2911 (SRN/FLN) |
| **Plaintiffs,** | **MEMORANDUM OPINION AND ORDER** |
| v. | |
| County of Ramsey, Keefe Commissary Network, L.L.C., First California Bank, Outpay Systems, L.L.C., and John Does 1-10, | |
| **Defendants**. | |

Joshua R. Williams and Timothy M. Phillips, Law Office of Joshua R. Williams, PLLC, 3249 Hennepin Avenue South, Suite 216, Minneapolis, Minnesota 55408, for Plaintiffs

Jason M. Hively and Susan M. Tindal, Iverson Reuvers Condon, 9321 Ensign Avenue South, Bloomington, Minnesota 55438, for Defendant Ramsey County

Russell S. Ponessa and Michael T. Berger, Hinshaw & Culbertson LLP, 333 South Seventh Street, Suite 2000, Minneapolis, Minnesota 55402, for Defendant Keefe Commissary Network, LLC

Marty E. Moore, Peck Hadfield, Baxter & Moore, LLC, 399 North Main, Suite 300, Logan, Utah 84321, and Daniel L. Payne, Meagher & Geer, PLLP, 33 South Sixth Street, Suite 4400, Minneapolis, Minnesota 55402, for Defendants First California Bank and Outpay Systems, L.L.C.

SUSAN RICHARD NELSON, United States District Court Judge

     This matter is before the Court on Plaintiffs' Motion for Class Certification,

Appointment of Class Representatives, and Appointment of Class Counsel [Doc. No. 21];

Plaintiffs' Motion for Judgment on the Pleadings, or in the Alterative, Summary

Judgment on the Issue of Liability [Doc. No. 38]; Defendant Ramsey County's Motion

for Judgment on the Pleadings [Doc. No. 53]; Defendant Keefe Commissary Network,

L.L.C.'s ("KCN's") Motion for Judgment on the Pleadings [Doc. No. 59]; and

Defendants First California Bank ("FCB") and Outpay Systems, L.L.C. ("Outpay's")

Motion for Judgment on the Pleadings [Doc. No. 64].)  For the reasons set forth herein,

Plaintiffs' judgment on the pleadings motion is denied and their class certification motion

is denied as moot.  Defendants' motions are granted.

## I.    BACKGROUND

Defendant Ramsey County charges a $25 booking fee to all individuals booked

for confinement in its detention facilities.  (Second Am. Compl. ¶¶ 25-27 [Doc. No. 14];

Ramsey Cnty. Sheriff's Office Inmate Booking Fee Policy at 1, Ex. 2 to Lindberg Aff.

[Doc. No. 73-2].)  The booking fee is imposed pursuant to Minnesota law and is assessed

to offset the costs associated with booking inmates.  (Ramsey Cnty. Sheriff's Office

Inmate Booking Fee Policy at 1, Ex. 2 to Lindberg Aff. [Doc. No. 73-2].)  Under

Minnesota law:

> A county board may require that each person who is booked for
> confinement … pay a fee to the sheriff's department of the county in which
> the jail is located to cover costs incurred by the county in the booking of
> that person. The fee is payable immediately from any money then possessed
> by the person being booked, or any money deposited with the sheriff's
> department on the person's behalf.

Minn. Stat. § 641.12, subd. 1.  If the individual being booked has no funds at the time of

booking, the sheriff must notify the district court in the county where the charges related to the booking are pending, and request the assessment of the fee.  (Id.)

Pursuant to the statute, detainees are entitled to a refund of the booking fee if they are not charged, are acquitted, or the charges against them are dismissed.  (Id.)  Ramsey County provides all inmates released from custody with a "Booking Fee Refund Form," and, consistent with Minn. Stat. § 641.13, subd. 1, the county's policy is to issue refunds of booking fees under the three circumstances noted above.   (Ramsey Cnty. Sheriff's Office Inmate Booking Fee Policy at 2, Ex. 2 to Lindberg Aff. [Doc. No. 73-2].)

Ramsey County's Inmate Handbook details the grievance procedure by which detainees may challenge unfair treatment.  (Ramsey Cnty. Inmate Handbook at 8, Ex. 4 to Lindberg Aff. [Doc. No. 73-4].)  The procedure contemplates both informal verbal grievances and formal written grievances:

GRIEVANCE PROCEDURE

If you think that you have been treated unfairly you may tell your Housing Officer, another staff member, or request to speak to a Sergeant.  If you are unable to resolve the issue verbally, you may file a formal grievance.

All formal grievances must be in writing and submitted on a Grievance Form.  All grievances are investigated and the results given to you.  If you are not satisfied with the decision, you may appeal it to a Lieutenant.  ICE Boarders may also file complaints with the Department of Homeland Security.

(Id.)

Also under Ramsey County's policies and procedures, cash inventoried from detainees at the Ramsey County Adult Detention Center is not returned in the form of

3

cash upon the detainees' release. (Second Am. Compl. ¶ 25 [Doc. No. 14]; Ramsey Cnty.

Inmate Handbook at 15, Ex. 4 to Lindberg Aff. [Doc. No. 73-4].)  Instead, detainees

receive a check or debit card upon release.  (Second Am. Compl. ¶ 26 [Doc. No. 14].)

Detainees who receive a debit card are provided with a Cardholder Agreement

explaining the fees associated with the card.  (Fee Information, Ex. A to Second Am.

Compl. [Doc. No. 14 at 30-33]; Cardholder Agreement, Ex. A to KCN's Answer to

Second Am. Compl. [Doc. No. 34-1 at 2-3].)  The Cardholder Agreement provides the

following information regarding fees:

> **Fees**.  We will provide you written notice of a change in fees at least thirty
> (30) days prior to the effective date of such change.  If [w]e are unable to
> contact you for any reason, [w]e will post the changes to the fees on the
> Card website at www.accessfreedomcard.com.  You will be deemed to have
> proper notice thirty days (30) after the amendments are posted.

| Card Usage Fees | Charge |
|---|---|
| Card Activation Fee | FREE |
| Weekly Maintenance Fee | $1.50* |
| Support Calls Fee | FREE |
| PIN Change Fee | FREE |
| Domestic ATM Fees** | $2.75 |
| | |
| International ATM Fees** | $3.75 |
| ATM Account Inquiry Fee | $1.50 |
| POS Debit Fee (PIN and Signature) | FREE |
| ATM Decline for NSF Fee | $2.75 |
| ATM Decline International Fee | $3.75 |
| Card to Bank Transfer (ACH) Fee | $3.00 |
| Account Closure Fee | $25.00 |

> * After one and one half (1.5) days/36 hours of issuance the card starts
> incurring weekly maintenance fees to cover the cost of the FDIC insured
> account.

    ** ATM Service providers may charge additional fees for ATM
transactions.

(Cardholder Agreement, Ex. A to KCN's Answer to Second Am. Compl. [Doc. No. 34-1

at 2-3].)

    Ramsey County's issuance of debit cards began in the fall of 2011 when the

county – which contracts with various suppliers of goods and services for its Adult

Detention Center – entered into an agreement with KCN to provide prepaid debit cards to

inmates released from the Adult Detention Center.  (Second Am. Compl. ¶ 9 [Doc. No.

14]; Agreement, Ex. A to Second Am. Compl. [Doc. No. 14 at 25-27].)   Pursuant to the

terms of the agreement between Ramsey County and KCN, FCB issued the debit cards

and Outpay processed any debit card transactions.  (Agreement, Ex. A to Second Am.

Compl. [Doc. No. 14 at 25-27]; Second Am. Compl. ¶¶ 32-33 [Doc. No. 14].)

    On May 22, 2013, Plaintiff Erik Mickelson ("Mickelson") was arrested in St. Paul

for violating a noise ordinance.  (Second Am. Compl. ¶ 11 [Doc. No. 17].)  Mickelson

was booked into the Ramsey County Law Enforcement Center.  (Id. at ¶ 12.)  At the time

Mickelson was booked, his inventoried personal property included $95 in cash.  (Id. at

¶ 13.)  Upon Mickelson's release later the same day, Ramsey County issued him a debit

card containing $70 – the value of his cash minus the $25 booking fee.  (Id. at ¶ 29.)

    On August 30, 2013, Plaintiff Corey Statham ("Statham") was arrested for

disorderly conduct and obstructing the legal process.  (Id. at ¶ 18.)  Statham was booked

into the Ramsey County Law Enforcement Center, where he remained for 48 hours.  (Id.

at ¶ 19.)  At the time Statham was booked, his inventoried personal property included $46 in cash.  (Id. at ¶ 20.)  Upon his release, Ramsey County issued Statham a debit card containing $21 – the value of his cash minus the $25 booking fee.  (Id. at ¶ 30.)

Plaintiffs assert the following claims against Ramsey County, KCN, FCB, and Outpay:  (1) a claim under 42 U.S.C. § 1983 that Defendants violated Plaintiffs' civil rights under the Fourth and Fourteenth Amendments (id. at ¶¶ 105-07); (2) a claim under 42 U.S.C. § 1985(3) that Defendants conspired to violate Plaintiffs' civil rights (id. ¶¶ 108-111); (3) a claim for conversion (id. ¶¶ 112-16); (4) a claim for civil theft in violation of Minn. Stat. § 604.14 (id. at ¶¶ 117-20); and (5) a claim of unjust enrichment (id. ¶¶ 121-24).

## II.     DISCUSSION

### A.     Standard of Review

Federal Rule of Civil Procedure 12(c) provides that a motion for judgment on the pleadings is appropriate after the pleadings are closed.  Fed.R.Civ.P. 12(c).  A motion for judgment on the pleadings will be granted "only where the moving party has clearly established that no material issue of fact remains and the moving party is entitled to judgment as a matter of law."  Waldron v. Boeing Co., 388 F.3d 591, 593 (8th Cir. 2004).

A motion for judgment on the pleadings is evaluated under the same standard as a Rule 12(b)(6) motion to dismiss for failure to state a claim.  Clemons v. Crawford, 585 F.3d 1119, 1124 (8th Cir. 2009).  The Court assumes the facts in the complaint to be true and construes all reasonable inferences from those facts in the light most favorable to the

plaintiff.  Morton v. Becker, 793 F.2d 185, 187 (8th Cir.1986).  The Court, however, need

not accept as true wholly conclusory allegations, Hanten v. Sch. Dist. of Riverview

Gardens, 183 F.3d 799, 805 (8th Cir.1999), or legal conclusions that the plaintiff draws

from the facts pled. Westcott v. City of Omaha, 901 F.2d 1486, 1488 (8th Cir. 1990).

    To survive a motion to dismiss, a complaint must contain "enough facts to state a

claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544,

545 (2007).  Although a complaint need not contain "detailed factual allegations," it must

contain facts with enough specificity "to raise a right to relief above the speculative

level." Id. at 555.  "Threadbare recitals of the elements of a cause of action, supported by

mere conclusory statements," will not pass muster under Twombly.  Ashcroft v. Iqbal,

556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 555).

    When considering a motion for judgment on the pleadings, the Court must also

generally ignore materials outside the pleadings.  The Court may consider the complaint,

"some materials that are part of the public record or do not contradict the complaint,"

orders, materials embraced by the complaint, and exhibits attached to the complaint.

Porous Media Corp. v. Pall Corp., 186 F.3d 1077, 1079 (8th Cir. 1999).  Here, the Court

considers the Second Amended Complaint and attached exhibits, Exhibit A to KCN's

Answer to the Second Amended Complaint (the "Cardholder Agreement"), and the

following exhibits to the Affidavit of Brad Lindberg:  Exhibit 1, September 22, 2009

Ramsey County Board Minutes (adopting booking fee) [Doc. No. 73-1]; Exhibit 2,

Ramsey County Sheriff's Office Inmate Booking Fee Policy [Doc. No. 73-2]; Exhibit 3,

7

Estimates for Booking Fee Charges [Doc. No. 73-3]; Exhibit 4, Ramsey County Inmate

Handbook [Doc. No. 73-4]; Exhibit 6, Debit Card Directive [Doc. No. 73-6].   The Court

considers these particular exhibits to be "embraced by the complaint," as the Second

Amended Complaint refers to the schedule of fees reflected in Exhibit A to KCN's

Answer to the Second Amended Complaint (the Cardholder Agreement) (see Second Am.

Compl. ¶¶ 36-42), and the Second Amended Complaint similarly refers to the policies or

information contained in Exhibits 1-4 and 6 to the Lindberg Affidavit.  (Id. at ¶¶ 15, 22,

25, 26, 27, 34, 35 [Doc. No. 14].)  No other documents will be considered.

### B.      42 U.S.C. § 1983

Plaintiffs have brought the instant lawsuit under 42 U.S.C. § 1983 alleging that

their constitutional rights were violated by the Defendants' actions.  Section 1983

provides a private cause of action against those who, under color of law, deprive a citizen

of the United States of "any rights, privileges, or immunities secured by the Constitution

and laws."  42 U.S.C. § 1983.  A plaintiff may bring a § 1983 claim against persons in

their individual or official capacity, or against a governmental entity.  See Baker v.

Chisom, 501 F.3d 920, 923 (8th Cir. 2007).  Under §1983, a municipality may not be held

vicariously liable for the unconstitutional acts of its employees.  Mettler v. Whitledge,

165 F.3d 1197, 1204 (8th Cir. 1999).  However, a municipality may be sued directly

under §1983 where the allegedly unconstitutional action implements or executes a policy

statement, ordinance, regulation, or decision officially adopted or promulgated by those

whose acts are representative of official policy.  Monell v. Dep't of Social Servs. of City

of New York, 436 U.S. 658, 690 (1978).

Because the imposition of § 1983 liability requires a plaintiff to establish a violation of a constitutional right, Avalos v. City of Glenwood, 382 F.3d 792, 802 (8th Cir. 2004), the Court first examines whether Plaintiffs' claims establish this element. Plaintiffs contend that Defendants violated their rights under the Fourth and Fourteenth Amendments through the denial of due process, the unlawful seizure of their property, and the denial of a property interest – all related to the loss of Plaintiffs' seized funds, the inconvenience imposed by the issuance of debit cards, and the amount of fees charged. (Second Am. Compl. §§ 105-07 [Doc. No. 14].)

### 1.    Due Process

The Due Process Clause of the Fourteenth Amendment is directed at the states and their political subdivisions, but it is otherwise identical to the Due Process Clause of the Fifth Amendment, which applies against the federal government.  Johnson v. Alexander, 572 F.2d 1219, 1220 (8th Cir. 1978).  Procedural due process imposes constraints on governmental decisions that burden a person's protected interests in life, liberty, or property, see Mathews v. Eldridge, 424 U.S. 319, 332 (1976), while substantive due process protects against official conduct that is conscience-shocking and violative of a fundamental right that is deeply rooted in history, and implicit in the concept of ordered liberty.  Slusarchuk v. Hoff, 346 F.3d 1178, 1181-82 (8th Cir. 2003) (citing Moran v. Clarke, 296 F.3d 638, 651 (8th Cir. 2002) (en banc) (Bye, J., concurring and writing for the majority on this issue).  Plaintiffs do not specify in their pleading whether they allege

a violation of procedural or substantive due process (see Second Am. Compl. ¶¶ 105-07

[Doc. No. 14]), however the arguments in Plaintiffs' Motion for Judgment on the

Pleadings address only procedural due process.  The Court therefore focuses its analysis

on procedural due process.

"Generally, 'due process requires that a hearing before an impartial decision-

maker be provided at a meaningful time, and in a meaningful manner.'"  Booker v. City

of Saint Paul, __ F.3d __, No. 13-2747, 2014 WL 3896174, at *2 (8th Cir. Aug. 7, 2014)

(quoting Coleman v. Watt, 40 F.3d 255, 260 (8th Cir. 1994)).  In Mathews, 424 U.S. at

335, the Supreme Court outlined three factors that courts must balance when determining

what procedural process is owed, and when that process is due, in order for the state to

deprive a person of their private property without violating the Constitution:

> [1] First, the private interest that will be affected by the official action; [2]
> second, the risk of an erroneous deprivation of such interest through the
> procedures used, and the probable value, if any, of additional or substitute
> procedural safeguards; and [3] finally, the Government's interest, including
> the function involved and the fiscal and administrative burdens that the
> additional or substitute procedural requirement would entail.

Id.  Balancing these factors in Mathews, the Supreme Court held that when the

government terminates Social Security disability benefits, it need only provide a post-

termination hearing.  Id. at 348.  The Court reached this conclusion based on the

"elaborate character" of the existing administrative procedures in place and the

substantial governmental interests at stake.  Id. at 339-40.  As the Mathews balancing test

suggests, due process is not a fixed, technical concept, but rather, it is flexible, "call[ing]

for such procedural protections as the particular situation demands." Id. at 334.

Accordingly, resolution of the instant motions requires analysis of the governmental and

private interests that are affected by the challenged policies.

The specific question of whether assessing a booking fee and returning arrestees'

money in the form of a prepaid debit card violates the Due Process Clause appears to be

an issue of first impression in the Eighth Circuit.  In Schilb v. Kuebel, 404 U.S. 357, 360-

61 (1971), the Supreme Court considered the constitutionality of an Illinois bail reform

statute that was enacted to curb abuses by professional bail bondsmen.  Under the statute,

a detainee could obtain pretrial release by depositing ten percent of the amount of bail,

but the clerk of court was allowed to keep ten percent of the amount deposited (i.e., one

percent of the amount of the bail).  Id. at 358.  Plaintiff challenged the statute on grounds

of equal protection and due process.  Upholding the statute, the Supreme Court found the

fee to be an acceptable "administrative cost" imposed on everyone who sought the benefit

of the statute and, therefore, found that it was not violative of due process.  Id. at 370-71.

Similarly, the majority of courts that have addressed the booking fee or bail fee

issue, including the Third, Fourth, Fifth, and Sixth Circuits, have held that the collection

of nominal fees from arrestees for booking, room and board, or bond – without a

predeprivation hearing – does not violate due process, particularly in light of the low

amount of discretion involved, the administrative nature of the fee, and the minimal risk

of error.  See, e.g., Sickles v. Campbell Cnty., Ky., 501 F.3d 726 (6th Cir. 2007) (finding

that withholding a portion of an inmate's canteen account funds to cover the costs of

booking and room and board, without holding a predeprivation hearing, did not violate

due process); Slade v. Hampton Roads Reg'l Jail, 407 F.3d 243 (4th Cir. 2005) (no

procedural due process violation when charges were deducted from pretrial detainee's

account without holding predeprivation hearing), Broussard v. Parish of Orleans, 318

F.3d 644 (5th Cir. 2003) (finding no due process violations as to bail fee statutes

requiring arrestees to pay certain fees after posting bail), Tillman v. Lebanon Cnty. Corr.

Facility, 221 F.3d 410 (3d Cir. 2000) (holding that predeprivation hearing was not

necessary prior to assessing a $10 daily housing fee during inmate's incarceration, and

that postdeprivation remedies satisfied due process); see also Markadonatos v. Vill. of

Woodbridge, __ F.3d __, No. 12-2619, 2014 WL 3566203 (7th Cir. July 21, 2014) (per

curiam) (although not reaching the due process merits, affirming the district court's

dismissal of a §1983 claim alleging a due process violation stemming from the

assessment of a $30 booking fee); Cole v. Warren Cnty., Ky., No. 1:11-DV-00189-JHM,

2012 WL 1950419, at *6 (W.D. Ky. May 30, 2012) (finding no due process deprivation

resulting from assessment of a $20 booking fee, a $20 daily housing fee, and a $5 bond

fee.); Hohsfield v. Polhemus, No. 11-3007 (FLW), 2012 WL 603089, at *4-5 (D. N.J.

Feb. 23, 2012) (holding that a booking fee and a $20 daily housing fee were "nominal and

non-punitive" and not violative of due process).  However, a minority of courts have held

that the imposition of a booking fee violates due process or may violate due process.  See,

e.g., Roehl v. City of Naperville, 857 F. Supp. 2d 707 (N.D. Ill. 2012) (ruling on

defendant's motion to dismiss that plaintiff asserted a plausible due process claim where

city ordinance imposed a $50 bail or bond fee on arrestees, but lacked procedural

protections and remedies); Allen v. Leis, 213 F. Supp. 2d 819 (S.D. Ohio 2002) (finding

that jail's policy of appropriating cash immediately to cover jail booking fee was not

statutorily authorized and violated due process).

    Turning to the first Mathews factor – the private interest at stake – Defendants

acknowledge that Plaintiffs have a property interest in their cash.  (Def. Ramsey Cnty.'s

Opp'n Mem. at 7 [Doc. No. 72]; KCN's Mem. Supp. Mot. for J. on the Pleadings at 12

[Doc. No. 61]; FCB's Mem. Supp. Mot. for J. on the Pleadings at 2 [Doc. No. 66])

(adopting arguments presented by Ramsey County and KCN).)   However, Defendants

characterize this interest as "slight," or of less significance than the other Mathews

factors.  (Id.)   In contrast, Plaintiffs cite Huss v. Spokane County, 464 F. Supp. 2d 1056,

1062 (E.D. Wash. 2006), to support their assertion that a person's interest in the

continued possession and use of his or her money is substantial.  While the district court

in Huss found this private interest "significant," and concluded that a statute which

required the immediate payment of a booking fee without a predeprivation hearing was

facially unconstitutional, id., the court later vacated its own ruling on a motion to

reconsider.  Huss, No. CV-05-180-FVS, 2007 WL 1115296, at *4 (E.D. Wash April 13,

2007) (finding that the plaintiff lacked standing).

    Plaintiffs have a property interest in their money that is protected by the Due

Process Clause of the Fourteenth Amendment, see Parrish v. Mallinger, 133 F.3d 612,

614 (8th Cir. 1998) (inmates have a property interest in their money); Jenson v. Klecker,

648 F.2d 1179, 1183 (8th Cir. 1981) (same), however, the Court does not find the interest

to be substantial.  Without diminishing Plaintiffs' property interest, the Court agrees with

the Sixth Circuit Court of Appeals in Sickles that

> [t]he private stakes at issue . . . do not begin to approach the kinds of
> government conduct that have required a predeprivation hearing, such as a
> limitation on the "historic" "right to maintain control over [one's] home,"
> United States v. James Daniel Good Real Prop., 510 U.S. 43, 53-54 (1993),
> or the termination of government benefits, which for many people are "the
> very means by which to live," Goldberg v. Kelly, 397 U.S. 254, 264 (1970).

Sickles, 501 F.3d at 730.  As in Sickles, the private interests at stake here, both with

respect to the $25 booking fee and the smaller fees associated with the debit cards, are

relatively modest.  Other courts have reached the same conclusion with respect to similar

fees.  See, e.g., Slade, 407 F.3d at 253-54 (finding the plaintiffs' property interest to be

slight under the first factor of the Mathews test); Broussard, 318 F.3d at 656-57

(characterizing the level of private interest as de minimis).

Under the second prong of Mathews, the Court considers the risk of erroneous

deprivation, and the probable value, if any, of any additional safeguards.  Mathews, 424

U.S. at 335.   The Sickles court found the risk of erroneous deprivation in withholding a

certain amount from inmates' canteen accounts to cover the costs of booking, room and

board to be "minor," observing that the "withholding of funds involves elementary

accounting that has little risk of error and is non-discretionary."  Sickles, 501 F.3d at 730.

Similarly, in Slade, the Fourth Circuit found that "[t]he daily deduction of the charge

from the prisoner's account is a ministerial matter with no discretion and minimal risk of error." Slade, 407 F.3d at 253-54 (citing Tillman, 221 F.3d at 422).

Ramsey County's booking fee policy is statutorily authorized and applicable to all persons booked for confinement.  Under the policy, the county's employees have no discretion in determining who should be charged the booking fee and who should not be charged.   Rather, as KCN observes, Ramsey County staff either assess a booking fee to an arrestee who is being booked, or they do not assess a booking fee to a person who has not been arrested and is not being booked.  (See KCN's Mem. Supp. Mot. for J. on the Pleadings at 12-14 [Doc. No. 61].)  This lack of discretion reduces the potential for erroneous deprivation.  Moreover, the assessment of the booking fee involves simple transactions which also lowers the risk of an erroneous deprivation.  Ramsey County's internal policy of refunding the booking fee to the person at their last known address if that person is not charged, is acquitted, or if the charges are dismissed (Ramsey Cnty. Sheriff's Office Inmate Booking Fee Policy at 2, Ex. 2 to Lindberg Aff. [Doc. No. 73-2]), provides an adequate post-deprivation remedy, given the nature and weight of the private interests at stake, as does Ramsey's County Adult Detention Center's internal grievance policy.  (Ramsey Cnty. Inmate Handbook at 8; 15, Ex. 4 to Lindberg Aff. [Doc. No. 73-4].)

In contrast, the absence of any such reimbursement procedure has led other courts to find similar booking fee ordinances unconstitutional.  See, e.g., Roehl, 857 F. Supp. 2d at 708.  While Plaintiffs argue that the potential availability of state law post-deprivation

remedies is inapplicable here (Pls.' Mem. Supp. Mot. for J. on the Pleadings at 18-19

[Doc. No. 39]) (citing Roehl, 857 F. Supp. 2d at 718), Ramsey County's own policy

provides for the booking fee refund in the circumstances authorized by Minn. Stat. §

641.12.  Ramsey County's remedy is not of the type found wanting by the court in Roehl

– there, the court held that the existence of a post-deprivation state law tort remedy did

not preclude a plaintiff's § 1983 due process claim.  Here, under Ramsey County's own

policy, detainees are provided with notice of both the provision for a booking fee refund

as well as the general internal grievance procedure.  (Ramsey Cnty. Inmate Handbook at

8, 15, Ex. 4 to Lindberg Aff. [Doc. No. 73-4].)  In upholding similar statutes and

ordinances, other courts have noted that the existence of a general inmate grievance

process satisfies the requirements of due process.  See, e.g., Sickles, 501 F.3d at 731

(noting that the plaintiffs had notice about fees and internal grievance procedures);

Tillman, 221 F.3d at 422 (stating,"The plaintiff had an adequate postdeprivation remedy

in the grievance program."); Cole, 2012 WL 1950419, at *8 (observing that the inmates

"were provided notice regarding the jail's internal grievance procedures); Hohsfield, 2012

WL 603089, at *6 (noting, "Pursuant to general state prison policy, inmates have an

opportunity to challenge the deductions from their inmate accounts through the general

internal inmate grievance procedure provided for them.").  The Court finds no due

process violation with respect to the booking fee.

Plaintiffs further argue that the risk of erroneous deprivation and the need for

additional or substitute safeguards is even greater with respect to the debit card fees.

16

(Pls.' Mem. Supp. Mot. J. Pleadings at 16 [Doc. No. 39].)   While Ramsey County returns the booking fee under certain circumstances, Plaintiffs contend that the deprivation of the "unavoidable" debit card fees is permanent.  (Id. at 17.)   The Court finds, however, that as with the set booking fee, the assessment of debit card fees is ministerial, involving set deductions, simple calculations, and a lack of discretion.  (See Cardholder Agreement, Ex. A to KCN's Answer to Second Am. Compl. [Doc. No. 34-1 at 2-3].)  As the Third Circuit found in Tillman with respect to a $10 per day housing fee, "[i]t is impractical to expect the prison to provide predeprivation proceedings" given the "low risk of error" associated with the program."  Tillman, 221 F.3d 410, 422 (3d Cir. 2000).  The possible benefits of any additional safeguards, including a pre-deprivation hearing, are slight and would be highly impractical and time-consuming, for the same reasons as noted above with respect to the booking fee.  Moreover, not only are arrestees informed of the issuance of debit cards, they are given information regarding the fees – including information on how to avoid incurring fees.  (Fee Information, Ex. A to Second Am. Compl. [Doc. No. 14 at 30-33]; Cardholder Agreement, Ex. A to KCN's Answer to Second Am. Compl. [Doc. No. 34-1 at 2-3].)

As to the third Mathews factor – the government's interest – this Court finds, as others have found, that the government's interest in "sharing the costs of incarceration and furthering offender accountability . . . are substantial."  Sickles, 501 F.3d at 732.  So too is "the government's interest in conserving scarce resources and the administrative burden on the government resulting from additional procedural requirements."

Broussard, 318 F.3d at 656.  Ramsey County has a strong interest in continuing to assess a nominal booking fee to offset at least a portion of the administrative costs incurred in booking detainees.[1]  Moreover, Ramsey County has an interest in avoiding an additional hearing before or after it assesses the $25 booking fee.  Such an additional administrative requirement would likely involve substantial resources and potential costs, including "court time, a judge's time, and a prosecutor's time, as well as the property owner's time, who may nor may not wish to be there and who may or may not retain an attorney." Booker, 2014 WL 3896174, at *4.

Ramsey County likewise has an important interest in returning detainees' funds to them in the form of a prepaid debit card.   Once the card is provided to the released detainee, Ramsey County is no longer involved – no further administrative expense is required.  Moreover, the issuance of a debit card provides certain benefits to detainees. The issuance of a card is immediate, whereas the provision of a check may be delayed. Moreover, despite Plaintiffs' contention that incurring fees is unavoidable, released detainees can avoid the imposition of debit card fees, and are specifically advised about how to do so in the provided Cardholder Agreement.  (See Cardholder Agreement, Ex. A

---

[1]  Ramsey County estimates that the true cost incurred in booking an inmate at the Adult Detention Center is over $65 per inmate.  (Preliminary Estimates for Booking Fee Charges, Ex. 3 to Lindberg Aff. [Doc. No. 73-3].)

to KCN's Answer to Second Am. Compl. [Doc. No. 34-1 at 2].)  Detainees are

specifically advised:

> **Want to save money on fees?  Follow these easy tips:**
>
> • Check your balance online or through customer service *before* using an
> ATM.
>
> • Use your card as a payment method in grocery stores, convenience stores,
> drug stores, or anywhere that accepts Debit MasterCard®.
>
> • If your card is rejected at an ATM, **never attempt over and over again**.
> Some ATMs impose a fee even for declined transactions.
>
> • Maintain your account for free online.
>
> • Retain this document for future reference.

(Id.) (emphasis in original).  As noted, detainees are also informed of the fees, or lack of

fees, associated with certain uses of the debit cards.  (Id.)  For example, they can receive

instant, free access to point-of-sale providers and the weekly maintenance fee of $1.50 is

only incurred after 36 hours of issuance.  (Id.)   In addition, released detainees may track

their purchases online and replace lost cards.  (Id. at 2-3.)   In the event of errors or

questions about debit card transactions, detainees are provided with a toll-free number

and mailing address.  (Id. at 3.)

Requiring Ramsey County to provide an additional hearing before or after any

such fees are deducted would be impractical and administratively inefficient.  Detainees

receive notice regarding the fees, are advised how to avoid incurring fees, and have

recourse with the card issuer to resolve any errors.  Balancing the Mathews factors with

19

respect to the debit card fees, the Court finds that Ramsey County's interest in providing a secure, efficient means by which detainees may immediately access their money outweighs Plaintiffs' interest in the relatively negligible fees that may possibly be deducted from their prepaid debit cards.  The Court finds no procedural due process violation.[2]

### 2.      Unlawful Seizure of a Property Interest

While the parties' memoranda focus primarily on Plaintiffs' Fourteenth Amendment due process claims, Plaintiffs' § 1983 claim also alleges a violation of the Fourth Amendment.  (Second Am. Compl. ¶¶ 105-07 [Doc. No. 14].)  To the extent that Plaintiffs address the Fourth Amendment aspect of their § 1983 claim, they contend that "Ramsey County officials intentionally take money from people being processed into the ADC. The deprivation of property occurs at the moment the booking fee is separated from the remainder of a detainee's property."  (Pls.' Mem. Supp. Mot. for J. on the Pleadings at 9 [Doc. No. 39].)

---

[2] While the Court finds that Plaintiffs' due process claims concern procedural due process, to the extent that they may be construed to allege substantive due process, they likewise fail.  As noted, substantive due process protects against official conduct that is conscience-shocking and violative of a fundamental right that is deeply rooted in history, and implicit in the concept of ordered liberty.  Slusarchuk, 346 F.3d at 1181-82.  "[A]ctionable substantive due process claims involve a level of . . . abuse of power so brutal and offensive that [they do] not comport with traditional ideas of fair play and decency."  Hart v. City of Little Rock, 432 F.3d 801, 806 (8th Cir. 2005).  Here, the imposition of a $25 booking fee and the possible imposition of small debit card fees do not rise to the level of conscience-shocking conduct that would support a substantive due process violation.  See Broussard, 318 F.3d at 657-58 (finding no substantive due process violation where the imposition of bail fees failed to infringe any fundamental rights and the fees were reasonable administrative charges, not arbitrary charges).

The Fourth Amendment to the United States Constitution, made applicable to the states by the Fourteenth Amendment, provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated. . . ." U.S. Const. amend. IV. Accordingly, every search or seizure by a government agent must be reasonable. Id. A "seizure" of property occurs when "'there is some meaningful interference with an individual's possessory interests in that property.'" Soldal v. Cook Cnty., Ill., 506 U.S. 56, 61 (1992) (quoting United States v. Jacobsen, 466 U.S. 109, 113 (1984)).

When a suspect is brought to a detention facility for booking, law enforcement officers have broad authority to remove and itemize all property found on the person or in the person's possession. Illinois v. Lafayette, 462 U.S. 640, 646 (1983). The standards used by courts in evaluating the constitutionality of inventory searches are helpful in this Court's analysis of Plaintiffs' claims of unlawful seizure of property. An inventory search protects the "owner's property while it remains in police custody," and also protects "police against claims or disputes over lost or stolen property" and "from potential danger[s]." United States v. Smith, 715 F.3d 1110, 1117 (8th Cir. 2013) (quoting South Dakota v. Opperman, 428 U.S. 364, 369 (1976)). An inventory search must be reasonable under the totality of the circumstances. United States v. Taylor, 636 F.3d 461, 464 (8th Cir. 2011). "The reasonableness requirement is met when an inventory search is conducted according to standardized police procedures, which generally remove the inference that the police have used inventory searches as a

purposeful and general means of discovering evidence of a crime." Id. (internal quotation

marks omitted); see also United States  v. Allen, 713 F.3d 382, 387-88 (8th Cir. 2013)

(stating that examining "all the items removed from the arrestee's person or possession

and listing or inventorying them is an entirely reasonable administrative procedure.).

    Here, Plaintiffs allege that it is "Ramsey County's policy to confiscate cash and

coin from all persons booked at its detention facilities and return such money in a form

other than cash." (Second Am. Compl. ¶ 34 [Doc. No. 14].)  Plaintiffs also contend that

Ramsey County "confiscates" the $25 booking fee from any of the funds found on the

detainee at booking.  (Id. ¶ 49.)  Similarly, Plaintiffs assert that the deduction of fees from

the debit cards issued by Ramsey County upon the detainees' release is an unlawful

seizure.  (Id. ¶ 35.)  Even if these actions may be characterized as "seizures," the booking

fees are assessed and collected pursuant to Minnesota state law and, as Plaintiffs

themselves allege, "Ramsey County's policy."  (See id. ¶ 34.)  Ramsey County's actions

in levying the $25 booking fee were therefore undertaken pursuant to both state law and

county policy.  Plaintiffs offer no allegations or facts suggesting that the fees were taken

for any purpose other than pursuant to state law and county policy.  Similarly, as to the

fees associated with the debit card, as Plaintiffs again allege, offering prepaid debit cards

to released detainees was undertaken pursuant to Ramsey County policy.  Nothing in the

record demonstrates that this practice is unreasonable, improperly administered, or

undertaken in bad faith.

    To the extent that Plaintiffs claim that the seizure of their funds upon booking or

through debit card processing fees offends the Fourth Amendment's reasonableness requirement because the seizure violates due process, for all of the reasons set forth in the Court's due process analysis, Plaintiffs' claim fails.  Accordingly, to the extent that Plaintiffs' § 1983 claim is premised on violations of the Fourth Amendment for unlawful seizure of Plaintiffs' property interests, the Court finds no constitutional violation.

### 3.     Failure to Train

As Ramsey County notes, Plaintiffs appear to assert a failure to train claim, alleging that "Ramsey County is sued directly and also, on all relevant claims, on the theories of respondeat superior or vicarious liability and pursuant to Minn. Stat. § 466.02 for the unlawful conduct of John Does 1-10.  Ramsey County is the political subdivision charged with training and supervising John Does 1-10."  (Second Am. Compl. ¶ 3 [Doc. No. 14].)

In "limited circumstances," a local government may be liable under § 1983 for the inadequate training of its employees, City of Canton, 489 U.S. at 387-88, "where (1) the [county's] . . . training practices [were] inadequate; (2) the [county] was deliberately indifferent to the rights of others in adopting them, such that the 'failure to train reflects a deliberate or conscious choice by [the county]'; and (3) an alleged deficiency in the . . . training procedures actually caused the plaintiff's injury." Parrish v. Ball, 594 F.3d 993, 997 (8th Cir. 2010) (citing Andrews v. Fowler, 98 F.3d 1069, 1076 (8th Cir. 1996)).  The

Supreme Court has limited such claims to very specific circumstances, explaining,

> That a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the city, for the officer's shortcomings may have resulted from factors other than a faulty training program. It may be, for example, that an otherwise sound program has occasionally been negligently administered. Neither will it suffice to prove that an injury or accident could have been avoided if an officer had had better or more training, sufficient to equip him to avoid the particular injury-causing conduct. Such a claim could be made about almost any encounter resulting in injury, yet not condemn the adequacy of the program to enable officers to respond properly to the usual and recurring situations with which they must deal. And plainly, adequately trained officers occasionally make mistakes; the fact that they do says little about the training program or the legal basis for holding the city liable.

City of Canton, 489 U.S. at 390-91 (citations omitted). Thus, a plaintiff must establish that, through the municipality's policymakers, it "failed to train or supervise employees despite: 1) having actual or constructive knowledge of a pattern of similar constitutional or statutory violations by untrained employees; or 2) the fact that the constitutional violation alleged was a patently obvious and 'highly predictable consequence' of inadequate training. Sampson v. Schenck, 973 F. Supp. 2d 1058, 1064 (D. Neb. 2013) (citing Board of Comm'rs of Bryan Cnty., Okla. v. Brown, 520 U.S. 397, 407–09 (1997)). The analysis applicable to claims for failure to train likewise applies to claims for failure to supervise. See Robinette v. Jones, 476 F.3d 585, 591 (8th Cir. 2007) (citing Liebe v. Norton, 157 F.3d 574, 579 (8th Cir. 1998)).

To the extent that Plaintiffs assert a failure to train or supervise claim against Ramsey County, because Plaintiffs have failed to demonstrate a constitutional or statutory

violation, as discussed herein, any such claim fails.[3]  "For there to be section 1983

liability, 'there must first be a violation of the plaintiff's constitutional rights.'" Avalos,

382 F.3d at 802 (quoting Shrum ex rel. Kelly v. Kluck, 249 F.3d 773, 777 (8th Cir.

2001)).   Accordingly, Plaintiffs' § 1983 claim is dismissed.

### C.    Conspiracy - 42 U.S.C. § 1985

Plaintiffs also assert a claim of conspiracy to violate their civil rights pursuant to

42 U.S.C. § 1985(3).  Although Plaintiffs do not specify the civil rights in question in

their § 1985(3) conspiracy claim, it appears that the conspiracy claim is based on

Defendants' alleged violations of Plaintiffs' due process rights, rights against unlawful

seizure, and rights against the denial of a property interest.  (Second Am. Compl. ¶¶108-

111 [Doc. No. 14]) (asserting in § 1985(3) claim, "By their conduct detailed above,

Defendants have been and continue to be jointly engaged in a conspiracy with the purpose

and effect of depriving Plaintiffs . . . of their federally protected civil rights.")   It also

appears that Plaintiffs' allegations of conspiracy are limited to the imposition and

collection of debit card fees – and not the $25 booking fee – as the Second Amended

Complaint asserts that "[b]y [Defendants'] knowledge that the debit card contract and

policy will result in unavoidable, nonconsensual fees . . . the Defendants' conspiracy is

---

[3]  Because the Court finds that Plaintiffs' § 1983 claim fails on the merits, it does
not address the additional argument raised by KCN, FCB, and Outpay that they were not
acting under color of law.  (See KCN's Mem. Supp. Mot. for J. on the Pleadings at 16-18
[Doc. No. 61]; FCB & Outpay's Mem. Supp. Mot. for J. on the Pleadings at 1-2 [Doc.
No. 66] (adopting arguments raised by co-Defendants).)

undertaken with the purpose and effect of directly and/or indirectly depriving the

Plaintiffs . . . of their constitutionally protected rights." (Id. ¶ 110.)  Because the Second

Amended Complaint does not reference Ramsey County's $25 booking fee, the Court

confines its analysis to Plaintiffs' claims of conspiracy related to the debit card fees.[4]

A plaintiff asserting a conspiracy claim under 42 U.S.C. § 1985(3), must establish

the following: (1) the defendants conspired; (2) with the intent to deprive the plaintiff,

either directly or indirectly, of equal protection of the laws, or equal privileges and

immunities under the laws; (3) an act in furtherance of the conspiracy; and (4) an injury to

the plaintiff's person or property, or a deprivation of any right or privilege of a citizen of

the United States.  Barstad v. Murray Cnty., 420 F.3d 880, 887 (8th Cir. 2005).  A

conspiracy claim requires a showing of an agreement between the conspirators to deprive

the plaintiff of his or her civil rights, id., and the agreement must be alleged with

sufficient particularity.  Marti v. City of Maplewood, Mo., 57 F.3d 680, 685 (8th Cir.

1995).  Conclusory allegations of conspiracy lacking sufficient facts concerning a mutual

understanding or meeting of the mind fail to state a claim under § 1985.  Cabal v. United

States Dep't of Justice, No. 92-2100, 1992 WL 336447, at *2 (8th Cir. Nov. 18, 1992)

(citing Snelling v. Westhoff, 972 F.2d 199, 200 (8th Cir. 1992).  Moreover, to

demonstrate the purpose or intent of the conspiracy under § 1985(3), a plaintiff must

demonstrate that race- or class-based animus motivated the defendant's actions.  See

---

[4] In any event, a §1985(3) claim as to Ramsey County's $25 booking fee would likely
fail, as it is imposed and collected solely by Ramsey County and not the corporate Defendants.

Griffin v. Breckenridge, 403 U.S. 88, 102 (1971); City of Omaha Employees Betterment

Ass'n v. City of Omaha, 883 F.2d 650, 652 (8th Cir. 1989).

As pleaded, Plaintiffs' § 1985(3) claim fails to specify the unlawful agreement

among the Defendants – in fact, the Plaintiffs' conspiracy claim does not mention an

agreement of any kind.  (See Second Am. Compl. ¶¶ 108-11 [Doc. No. 14].)   At most,

Plaintiffs assert that Defendants passively knew that imposing fees would diminish the

value of Plaintiffs' property and that the conspiracy was undertaken with the purpose of

"depriving Plaintiffs . . . of their constitutionally protected rights."  (Id. ¶ 110.)  Yet, as

noted in the Court's analysis above, Plaintiffs have failed to establish the violation of a

constitutional right.

Nor do Plaintiffs allege that the imposition and collection of the debit card fees

was motivated by animus based on race or class.  To the extent that Plaintiffs argue in

their motion papers – but do not assert in their pleadings –  that Defendants' actions

disproportionately impact persons of color because such persons may be detained at

disproportionate rates (Pl.'s Mem. Supp. Mot. for J. on the Pleadings at 20-21 [Doc. No.

39]), a disproportionate effect, standing alone, does not demonstrate that such persons are

deprived of equal protection of the laws.  See Washington v. Davis, 426 U.S. 229, 242

(1976); see also Henley v. Brown, 686 F.3d 634, 641-42 (2012) (noting, as to a § 1983

claim, that an act does not violate equal protection simply because it has a racially

disproportionate effect; rather, "to amount to a constitutional violation, the act must be

committed with a 'discriminatory racial purpose.'"); Inmates of Neb. Penal and Corr.

Complex v. Greenholtz, 567 F.2d 1368, 1374-75 (8th Cir. 1977) ("It is incumbent upon plaintiffs to establish that a racially disproportionate impact, if there is one, was occasioned by a racially motivated purpose.").  What is lacking here is any allegation, based on fact, that Defendants agreed to impose and collect the debit card fees with the purpose of discriminating against persons based on race or class.  Nothing before the Court demonstrates the existence of such a purpose – much less have Plaintiffs alleged even a bald statement to this effect in their § 1985 claim or in their general factual allegations.  Of course, a bald statement, without more, would fail in any case, as the claim would fail to contain facts with enough specificity "to raise a right to relief above the speculative level." Twombly, 550 U.S. 555.   In any event, the facts, even as pleaded by Plaintiffs, show that Ramsey County contracted with KCN with respect to the debit cards.  (Second Am. Compl. ¶ 9 [Doc. No. 14].)   Plaintiffs fail to allege or point to any facts demonstrating that this contractual agreement was motivated by a desire to deprive persons of their constitutional rights based on reasons of race or class.  In addition, the facts as alleged by Plaintiffs show that, under the terms of the contract between Ramsey County and KCN, debit cards were issued by FCB and transactions were processed by Outpay.  (Id. ¶¶ 32-33.)   Thus, once Ramsey Count gives a released detainee a card, Ramsey County has no role in the assessment or collection of debit card fees.

For all of the reasons set forth above, the Court thus finds that Defendants are entitled to judgment as a matter of law on Plaintiffs' civil conspiracy claim.

**D.     State Law Claims**

Plaintiffs assert claims of conversion, civil theft under Minn. Stat. § 604.14, and unjust enrichment against Defendants.  As to the portion of these claims based on the imposition of debit card fees, the Cardholder Agreement provides for the application of California law.  (Cardholder Agreement, Ex. A to KCN's Answer to Second Am. Compl. [Doc. No. 34-1 at 2-3].)  Because the Court finds that under either Minnesota or California law, the outcome of the instant motions is the same as to these claims, the Court need not decide which state's law to apply.  Leonards v. Southern Farm Bureau Cas. Ins. Co., 279 F.3d 611, 612 (8th Cir. 2002) (noting that when the relevant legal principles are the same in the states at issue, the court need not resolve which state's law applies).

**1.     Conversion**

"Conversion occurs where one willfully interferes with the personal property of another 'without lawful justification,' depriving the lawful possessor of 'use and possession.'"  Williamson v. Prasciunas, 661 N.W.2d 645, 649 (Minn. Ct. App. 2003) (citing DLH, Inc. v. Russ, 566 N.W.2d 60, 71 (Minn. 1997)).  The elements of conversion are: (1) the plaintiff holds a property interest, and (2) the defendant deprives plaintiff of that interest.  Id.; accord Los Angeles Fed. Credit Union v. Madatyan, 147 Cal. Rptr. 3d 771 (Cal. Ct. App. 2012) (stating, "Conversion is the wrongful exercise of dominion over the property of another.  The elements of a conversion claim are: (1) the plaintiff's ownership or right to possession of the property; (2) the defendant's conversion by a

wrongful act or disposition of property rights; and (3) damages.") (citation omitted).

While Plaintiffs hold a property interest in their money, the fees at issue were assessed

with lawful justification.  Ramsey County assessed the $25 booking fee pursuant to Minn.

Stat. § 641.12, subd. 1, to cover costs incurred in the booking process.

Likewise, there is nothing unlawful about the imposition of small, administrative

debit card fees, which are largely avoidable, in any event.  The assessment of the debit

card fees arises out of a valid, lawful agreement between Ramsey County and KCN.

(Agreement, Ex. A to Second Am. Compl. [Doc. No. 14 at 25-27].)  Accordingly,

because the imposition of the booking fee and the debit card fees was lawfully justified,

Plaintiffs' claim for conversion fails.   See Strei v. Blaine, __ F. Supp. 2d __, No. 12-CV-

1095 (JRT/LIB), 2014 WL 555205, at *19 (D. Minn. Feb. 12, 2014) (plaintiff's

conversion claim failed where there was no evidence of unlawful actions with respect to

the property); Rachuy v. Pauly, Nos. A13-393, A13-394, 2014 WL 103388, at *3 (Minn.

Ct. App. Jan. 13, 2014) (finding that conversion claim did not lie where the plaintiff

presented no evidence that the officer acted without justification in police seizure of

property); Hassan v. City of Minneapolis, No. C8-00-154, 2000 WL 1051910, at *4

(Minn. Ct. App. Aug. 1, 2000) (concluding that the plaintiff's conversion claim failed

because there was lawful justification for the seizure of the plaintiff's property pursuant

to a search warrant); accord Encompass Holdings, Inc. v. Daly, No. C09-1816 BZ, 2011

WL 5024450, at *6 (N. D. Cal. 2011) (finding that a conversion claim under California

law failed where there was no evidence that defendants purported to be the owners of the

property or that defendants' actions constituted unlawful possession or control).  The Court therefore finds that Plaintiffs' conversion claim fails and it is dismissed.

### 2.      Civil Theft

Regarding Plaintiffs' civil theft claim under Minn. Stat. § 604.14, the statute provides, in relevant part: "**Liability for theft of property**. A person who steals personal property from another is civilly liable to the owner of the property for its value when stolen plus punitive damages of either $50 or up to 100 percent of its value when stolen, whichever is greater."  Minn. Stat. § 604.14, subd. 1 (emphasis in original).  While noting that there is limited authority addressing Minnesota's civil theft statute, this Court has relied upon Minnesota's criminal theft statute, Minn. Stat. § 609.52, in determining whether a defendant's conduct constitutes civil theft.  Strei, 2014 WL 555205, at *20. Among the definitions of theft in Minnesota's criminal theft statute is the taking of property "without claim of right."  Minn. Stat. § 609.52, subd. 2(1).  This Court "[has found] this standard to be analogous to the 'without legal justification' standard for conversion and trespass to chattel."  Strei, 2014 WL 555205, at *20.  For the reasons noted above, the imposition of the $25 booking fee and the debit card fees is legally justified.  Assessing and collecting such fees cannot be construed as "theft" or "stealing" under the civil theft statute.  Accordingly, dismissal is appropriate as to Plaintiffs' civil theft claim.

### 3.    Unjust Enrichment

For the unjust enrichment claim to survive, Plaintiffs must show that Defendants "'knowingly received something of value to which [they were] not entitled, and that the circumstances are such that it would be unjust for [Defendants] to retain the benefit.'" Hennepin Cnty. v. Fed. Nat'l. Mortg. Ass'n., 933 F. Supp. 2d 1173, 1179 (D. Minn. 2013) (DSD/TNL) (quoting Schumacher v. Schumacher, 627 N.W.2d 725, 729 (Minn. Ct. App. 2001)); accord In re ConAgra Foods Inc., 908 F. Supp. 2d 1090, 1113 (C.D. Cal. 2012) (citing Lectrodryer v. SeoulBank, 91 Cal. Rptr. 2d 881 (Cal. Ct. App. 2000)). Moreover, "'[u]njust enrichment claims do not lie simply because one party benefits from the efforts or obligations of others, but instead it must be shown that a party was unjustly enriched in the sense that the term 'unjustly' could mean illegally or unlawfully.'" City of Maple Grove v. Marketline Const. Capital, LLC, 802 N.W.2d 809, 817-18 (Minn. Ct. App. 2011) (quoting ServiceMaster of St. Cloud v. GAB Bus. Servs., Inc., 544 N.W.2d 302, 306 (Minn. 1996)).  As discussed above, Ramsey County is legally entitled to impose a booking fee and to contract with third parties for particular services.  Pursuant to KCN's agreement with Ramsey County, the assessment of debit card fees, or "coordination fees," was legally authorized.  (Agreement, Ex. A to Second Am. Compl. [Doc. No. 14 at 26].)   Defendants were not "unjustly enriched" by the imposition of these fees and the equitable remedy of unjust enrichment is unavailing to Plaintiffs. Defendants' motion for the dismissal of this claim is granted.

Finally, the Court notes that Plaintiffs do not distinguish among Defendants with respect to these claims (see Second Am. Compl. ¶¶ 112-24 [Doc. No. 14]), although the record demonstrates that Ramsey County alone assessed the $25 booking fee, whereas KCN, FCB, and Outpay acted with respect to the debit card fees.  Thus, even if these claims succeeded on the merits, portions of the claims would fail as to the particular Defendants.

### E.      Motion for Class Certification

In light of the dismissal of all of Plaintiffs' claims, Plaintiffs' Motion for Class Certification, Appointment of Class Representatives, and Appointment of Class Counsel [Doc. No. 21] is denied as moot.

### F.      Immunity

Ramsey County raises various claims of immunity in its memoranda.  Because all of Plaintiffs' asserted claims against Defendants are dismissed, the Court will not address these arguments.

**THEREFORE, IT IS HEREBY ORDERED THAT:**

1.      Plaintiffs' Motion for Class Certification, Appointment of Class Representatives, and Appointment of Class Counsel [Doc. No. 21] is **DENIED AS MOOT**;

2.      Plaintiffs' Motion for Judgment on the Pleadings, or in the Alterative, Summary Judgment on the Issue of Liability [Doc. No. 38] is **DENIED**;

3.      Defendant Ramsey County's Motion for Judgment on the Pleadings [Doc.

No. 53] is **GRANTED**;

4.      Defendant Keefe Commissary Network, L.L.C.'s ("KCN's") Motion for

Judgment on the Pleadings [Doc. No. 59] is **GRANTED**; and

5.      Defendants First California Bank and Outpay Systems, L.L.C. ("Outpay's)

Motion for Judgment on the Pleadings [Doc. No. 64]) is **GRANTED**;

6.      All claims (Counts I-V) in the Second Amended Complaint [Doc. No. 14]

are **DISMISSED WITH PREJUDICE**.


**LET JUDGMENT BE ENTERED ACCORDINGLY**.


Dated:    August 26, 2014

                                                s/Susan Richard Nelson
                                                SUSAN RICHARD NELSON
                                                United States District Court Judge